Charles J. Scriven Chairman Parole and Probation Commission Tallahassee
QUESTION:
Are the commissioners of the Florida Parole and Probation Commission entitled to payment of accrued annual and sick leave upon retirement?
SUMMARY:
Members of the Parole and Probation Commission are state officers, not merely state employees. As such, they are not entitled by law to accrue annual or sick leave or to be paid for unused annual or sick leave upon termination of duty or service with the state or upon retirement, absent express authorization by statute.
You have stated that this opinion request was suggested by the Auditor General, by whom you have been initially advised that no statutory has been found allowing members of the Parole and Probation Commission (as opposed to commission employees) to accrue annual or sick leave or to receive payments based upon claims of accrued annual or sick leave upon retirement as members of the commission.
The question you now ask was addressed and answered in the negative in an informal opinion of this office dated April 8, 1976. In that informal opinion, one of my assistants concluded that members of the commission are public officers and that, as such, they are not entitled — absent statutory authority — to accrue annual and sick leave or to receive terminal payments therefor. It was noted in the informal opinion that public officers have no claim to compensation except as clearly provided by law (which law must be strictly construed), Gavagan v. Marshall, 33 So.2d 862,864 (Fla. 1948), but that where compensation is provided by law for performance of the duties of the office, `[t]he right of an officer to compensation is not impaired by his occasional or protracted absence or a temporary incapacity to perform its duties or the neglect of its duties.' Hanchey v. State, 52 So.2d 429, 432
(Fla. 1951). As was stated in the informal opinion, `[i]n other words, a set amount of money goes with the office whether you are on the job or not.' Thus, absent express statutory authority to the contrary, it is to be presumed that an officer is to be paid the salary that goes with the office, regardless of the actual time spent performing the duties of the office, until such time as the officer no longer holds the office. That the members of the Parole and Probation Commission are state officers and not merely state employees is clear. In the April 8, 1976, informal opinion to your predecessor as chairman, my assistant relied upon the description of the characteristics of an officer provided by the Florida Supreme Court in State v. Hocker, 22 So. 721, 723 (Fla. 1897). Under that judicial standard, which has been repeatedly relied upon by the courts and this office, it is said that the status of public officers contemplates
 . . . the idea of tenure, duration, emolument, and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional, or incidental employment. A person, in the service of the government, who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature, and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts, or duties, as a part of the regular administration of the government, the place and the duties remaining, though the incumbent dies or is changed . . . .
I find the above-quoted standards from Hocker to be clearly met in the case of members of the Parole and Probation Commission. For example, the members of the commission are appointed by the Governor and Cabinet, subject to confirmation by the Senate, s.947.02, F. S.; the term of a member of the commission is fixed by statute, s. 947.03, F. S.; each member of the commission is subject to removal by the Governor and Cabinet for the same reasons that a state officer may be removed pursuant to s. 7, Art. IV, State Const., and s. 947.03(3), F. S.; and the duties of commission members are fixed by statute, s. 947.13, F. S. In determining whether an individual is a state officer, the courts have also emphasized that, in addition to possessing characteristics such as those enumerated in Hocker, supra, an officer is one to whom is delegated a portion of the sovereign powers of the state. State v. Lee, 7 So.2d 110 (Fla. 1942); McSween v. State Live Stock Sanitary Board of Florida, 122 So. 239
(Fla. 1929); State v. Jones, 84 So. 84 (Fla. 1920). In my opinion, the duties delegated to members of the commission clearly constitute a delegation of a portion of the sovereign powers of the state, in accordance with the standards set forth in the cases cited immediately above. In addition, see In re Advisory Opinion to the Governor, 225 So.2d 512 (Fla. 1969), in which the justices placed considerable reliance on the language of the constitutional and statutory provisions creating the office there in question. In this regard, see s. 8(c), Art. IV, State Const., and the various provisions of Ch. 947, F. S., cited above, such as s. 947.03(3), F. S., providing in part that `[e]ach member shall devote his whole time and capacity to the duties of his office . . . .' (Emphasis supplied.) By applying the standards and principles provided in all of these cases, I can only conclude, beyond question, that the members of the Parole and Probation Commission are officers of the state.
It is provided in s. 5(c), Art. II, State Const., that `[t]he powers, duties, compensation and method of payment of state and county officers shall be fixed by law.' (Emphasis supplied.) And, Florida courts have stated that:
 Public officers have no legal claim for official services rendered, except when, and to the extent that, compensation is provided by law, and when no compensation is so provided, the rendition of such services is deemed to be gratuitous. [Rawls v. State, 122 So. 222 (Fla. 1929).]
In accord: State v. Reardon, 154 So. 868, 871 (Fla. 1934); Gavagan v. Marshall, 33 So.2d 862, 864 (Fla. 1948). It has been stated that `the statutes dealing with the compensation payable to public officials are to be construed strictly.' Pridgeon v. Folsom,181 So.2d 222, 226 (1 D.C.A. Fla., 1965). And, it is a general rule that the right to accrue vacation and sick leave and to receive payment for accumulated, unused vacation and sick leave, is dependent on statutory authorization. 81A C.J.S. States s. 106c., p. 513.
The amount of compensation to be paid to each member of the commission was, at one time, specifically set by the Legislature (see s. 26, Ch. 74-300, Laws of Florida, the 1974 General Appropriations Act, providing: `The salaries of commissioners of the Florida Parole and Probation Commission shall be increased effective July 1, 1974 from $24,000 per annum to $27,600; reference chapter 110.051(1)(c), F. S.'). Since 1974, however, there has been only a lump sum salary appropriation made to the commission with no specific amount required by the Legislature to be paid to the commissioners.
In the absence of legislative direction, the salaries of the commissioners have been set by the Department of Administration, pursuant to s. 110.051(2)(c), F. S. Subsection (2) of s. 110.051 delineates those positions (including both officers and employees) which are not covered by any of the provisions of Ch. 110, F. S. Paragraph (c) of s. 110.051(2) exempts from the provisions and operation of Ch. 110, F. S., `[m]embers of boards and commissions and the head of each state agency, board or commission, however selected . . . .' However, s. 110.051(2)(c) goes on to provide that, notwithstanding the fact that such positions are not subject to the provisions of Ch. 110, `the department [of Administration] shall set the salary of these positions unless otherwise fixed by law.' This latter provision, then, is the only part of Ch. 110, F. S., which is applicable to the members of the Parole and Probation Commission. Therefore, it must follow that the various personnel rules — including those pertaining to annual and sick leave — promulgated by the Division of Personnel of the Department of Administration (appearing in Ch. 22A, Florida Administrative Code) are not applicable to the members of the commission. (The statutory authority for these rules is s. 110.022, F. S. As s. 110.022 is expressly made inapplicable to members of the commission by s. 110.051(2), supra, it follows that the rules promulgated under the authority of and in implementation of s. 110.022 likewise are inapplicable to the members of the commission.) Moreover, s. 110.022(1)(e), F. S., empowers the Department of Administration to establish and maintain uniform leave policies only for `all employees in the career service.' The members of the Parole and Probation Commission are officers, as stated above, and not employees in the career service system established by Ch. 110, F. S.
Having established that the various personnel rules and regulations of the Department of Administration are inapplicable to the members of the Parole and Probation Commission, I must look to the Florida Statutes for guidance as to the method of fixing compensation of members of the commission. In this regard, it is significant to note that s. 110.051(2)(c), supra, empowers the Department of Administration only to set the `salary' of the members of the commission when not otherwise fixed by law. It appears that what is contemplated is the setting of a specific amount of salary, as would otherwise be done by separate statute or in a line item of a general appropriations act. Cf. s. 19 of Ch. 77-465, Laws of Florida, and ss. 20.17(3)(a)3., 440.45(3), and447.205(2), F. S. The provision does not authorize the Department of Administration to establish the form, elements, or method of compensation — only the fixed amount. And, I find nothing in s. 110.051(2)(c) empowering the department to grant leave or to require or authorize members of the commission to accrue annual or sick leave.
It is the apparent position of the Department of Administration that it may set the `salary' of commission members by comparing them to certain state employees (such as division directors) and by using a formula in computing the commissioners' salaries which contemplates and incorporates the accrual of annual and sick leave along with the periodic salary payments, in order to arrive at the total `salary' payable to the officers in question. I must reiterate that I find nothing in s. 110.051(2)(c) authorizing the Department of Administration to do more than set a specific dollar amount of salary, as would otherwise be provided in an appropriations act or other acts of the Legislature (such as those cited above). Also, I would again emphasize the above-quoted constitutional provision, s. 5(c), Art. II, which mandates that the `compensation and method of payment' of state officers `shall be fixed by law.' [See Dade County v. State, 116 So. 72 (Fla. 1928); State v. Lee, 197 So. 681 (Fla. 1940); State v. Lee,5 So.2d 595 (Fla. 1941); Musleh v. Marion County, 200 So.2d 168
(Fla. 1967); and AGO 065-39, as to the exercise by agencies other than the Legislature of various functions relating to the fixing of compensation under the 1885 Constitution's requirement — in s. 27, Art. III — that state and county officers' compensation be fixed by law.]
I have been advised that, when a similar question arose in 1976 involving the retirement of a former member of the commission (which prompted the April 8, 1976, informal opinion referred to above), that former commissioner was denied terminal payment for sick and annual leave credits the commissioner claimed to have accrued. In conversations with various commission personnel, I have been advised of no facts distinguishing the instant case from that of the commissioner who retired in 1976 and who was denied the payment now being sought by another commissioner. In addition, I have been advised by commission personnel that the commissioner now in question was originally an employee of the commission and that, upon his appointment as a member of the commission, he was paid for all annual and sick leave which he had accrued as anemployee of the commission. This fact leads to the inference that neither the commissioner in question nor the commission itself contemplated further accrual of leave credits for which terminal payment could be received once the commissioner in question had changed his status from employee to officer. It is also my understanding that various members of the commission have expressed the view that, as officers, they would expect to continue receiving their salaries during any period of extended illness, even if the sick leave credits they have purported to accrue were used up. All of these facts support the view expressed in the April 8, 1976, informal opinion, that the commissioners — as officers and not employees — are entitled to their official salaries regardless of actual time spent performing their official duties and are, accordingly, not entitled to accrue annual or sick leave or to be paid upon retirement for unused annual or sick leave.
Therefore, I am of the opinion that the result reached in the April 8, 1976, informal opinion of this office was correct and should continue to be followed. Until the Legislature provides clear and express authorization, or until this question is decided otherwise by the courts, the commissioner in question is not lawfully entitled to and should be denied terminal payment based on claimed accrual of annual or sick leave credits. I would urge the Legislature to reexamine the method by which the fixing of the compensation or salaries of the members of the Parole and Probation Commission, as well as other state officers, is delegated to the Department of Administration. The Legislature should either specifically set the salaries of the commissioners, and other state officers, in the annual appropriations act (which would be the most advisable course, in light of the requirement in s. 5(c), Art. II, supra, that state officers' compensation and method of payment be fixed by law) or expressly authorized the commissioners and other state officers, notwithstanding their status as officers, to accrue annual and sick leave and to be paid for unused annual and sick leave at the time of termination of service with the state (and accordingly require that accurate attendance records be kept so as to enable verification of leave time claimed and to facilitate auditing duties of the Auditor General and internal auditors or other fiscal personnel of the affected agencies).
Your question is answered in the negative.
Prepared by: Jerald S. Price, Assistant Attorney General